# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | Criminal Action No. 22-41-RGA-2 |
| **MARCEL RASHAWN CLINTON,** : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Marcel Rashawn Clinton opened numerous bank accounts that received deposits derived from fraudulently obtained Economic Injury Disaster Loans (EIDL) that were designed to help small businesses struggling in the aftermath of the COVID-19 pandemic. He withdrew tens of thousands of those dollars from those accounts for his own benefit. The government submits that consideration of the facts of this case and the § 3553(a) factors demonstrates that a 12-month probationary sentence is sufficient but not greater than necessary to comply with the goals of sentencing. For those reasons and the reasons set forth below, the government respectfully recommends that the Court sentence Clinton to 12 months of probation.[1]

I. **Background**

  1. Procedural History

On November 17, 2022, the government filed a one-count information charging Clinton with entering a bank with the intent to commit a felony, in violation of 18 U.S.C. § 2113(a). (D.I. 101 (Presentence Investigation Report ("PSR")) ¶ 4.)[2] On November 30, 2022, Clinton appeared before this Court and pleaded guilty to the information. PSR ¶ 5. Sentencing is currently set for

---

[1] As is standard practice in this District, the government is attaching a sealed Attachment A to this Sentencing Memorandum.
[2] Clinton had originally been charged by indictment with a single count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). PSR ¶ 1.

January 11, 2024.

## 2. Factual Background[3]

Clinton worked with a Philadelphia-based crew of individuals that laundered fraud proceeds on behalf of a criminal organization. Clinton was introduced to that group through a long-time friend who, unbeknownst to Clinton at first, was a member of that criminal organization. Much of the fraud proceeds that Philadelphia-based crew helped launder derived from EIDLs that were fraudulently obtained by other members of the conspiracy.

The EIDL Program was one avenue the government—through the U.S. Small Business Administration (SBA)—provided emergency economic relief to small businesses struggling from the economic disruption caused by the COVID-19 pandemic. During the relevant time period, small business owners could apply for loans up to $150,000 by submitting applications to the SBA through an online portal. EIDLs were therefore used at the time to provide a safety net to small business owners that were facing one of the most difficult economic realities of recent memory. They were not designed to pad the pockets of criminals.

The criminal organization with which Clinton got involved devised a plan to divert funds intended to help small businesses weather the COVID-19 pandemic into their own hands. Other members of this organization coopted the names and information belonging to small businesses throughout the United States to fill out applications for EIDLs.

The criminal organization—based overseas—needed to direct their EIDL proceeds somewhere. They accomplished that by recruiting money mules and money launderers around the United States to open and/or utilize business bank accounts in the name of sham entities. The organization then used the bank account information for those accounts on the fraudulent EIDL

---

[3] The facts in this section derive from the PSR.

applications as part of the effort to deceive the SBA and receive the EIDL proceeds. Clinton was a money mule used by the criminal organization to open bank accounts for the purpose of receiving fraud proceeds, including fraudulently obtained EIDLs. Clinton was at first led by his long-time friend to believe that he was joining a real estate business opportunity. He therefore agreed to open numerous business bank accounts in the name of a purported real estate entity JQ Real Estate LLC. That entity, however, was a sham LLC registered by another member of the criminal organization. Clinton ultimately opened business bank accounts in the name of JQ Real Estate LLC at Citizens Bank, JP Morgan Chase, and PNC Bank.

Clinton ultimately grew suspicious and questioned whether his accounts were, in fact, being used as part of a real estate business opportunity. But despite growing to understand that his accounts were being used to funnel ill-gotten gains, he continued to allow his accounts to be used for that purpose and agreed to conduct financial transactions with the ill-gotten gains based on instructions received from other individuals. Clinton agreed to do so, in part, because he was promised compensation for his role in opening the bank accounts.

Over an approximate two-week period, the accounts Clinton opened received at least 7 separate EIDLs totalling over $1 million. The vast majority of that money was routed—via Clinton or others—to other individuals within the criminal organization. For his efforts, Clinton kept about $30,000 for himself and his family.

II. **A 12-Month Probationary Sentence Is Sufficient But Not Greater Than Necessary To Comply With the 18 U.S.C. § 3553(a) Factors**

In sentencing Clinton, the Court must consider the statutory factors set forth in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense; Clinton's history and characteristics; and the need to deter Clinton from contemplating similar crimes in the future. Consideration of the § 3553(a) factors in this case demonstrates that a 12-month probationary

sentence is sufficient but not greater than necessary to comply with the statutory sentencing factors.

The nature and circumstances of Clinton's conduct in this case show that he allowed himself to be used in furtherance of criminal activity out of a desire to make easy money. Although he may have initially put his trust in the wrong person when agreeing to a "business opportunity," Clinton knew the tens of thousands of dollars he took out of his accounts for his own benefit did not belong to him; he knew that money derived from crime. But the government acknowledges that Clinton was led astray by a long-time friend and the government does not believe Clinton set out to commit a crime when he first opened the bank accounts. His accounts, moreover, only received fraudulent EIDL proceeds for an approximate two-week period of time. And nearly 98% of the fraud proceeds flowing through Clinton's account were ultimately distributed to other members of the criminal organization.

Clinton's personal history and characteristics support a probationary sentence. Clinton has no criminal history and, apart from a minor traffic violation, appears to have had no contact at all with the criminal justice system. And his life has not been without its challenges. He grew up in Liberia where, as a child, he reports living through the First Liberian Civil War that exposed him to violence and caused him to be uprooted from his home for a period of time. Clinton's life in Liberia was again disrupted as a teenager when the Second Liberian Civil War broke out. Clinton, as an adult, experienced the loss of a young child to cancer in January 2022.

A term of probation is also sufficient in the government's view to deter Clinton from engaging in similar criminal conduct in the future. As explained above, this is Clinton's first brush with the criminal justice system. The government does not believe a custodial sentence is necessary to deter Clinton from engaging in future criminal conduct; a felony conviction and probationary sentence is sufficient.

Last, the government is mindful that for individuals with no criminal history points, such as Clinton, the Sentencing Guidelines provide that "a sentence other than a sentence of imprisonment . . . is generally appropriate" when a defendant's guideline range falls in Zone A or Zone B of the Sentencing Table. U.S.S.G. § 5C1.1 n.10(A). Here, Clinton's anticipated guideline range will fall within Zone B. A probationary sentence in this circumstance is therefore appropriate.

### III.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court sentence Clinton to a 12-month term of probation and restitution as set forth in the PSR.

Respectfully submitted,

DAVID C. WEISS
UNITED STATES ATTORNEY

*/s/ Jesse S. Wenger*
By:   Jesse S. Wenger
       Assistant United States Attorney

Dated: December 28, 2023